UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
SEAN FIGARO,

                Plaintiff,

    - against -                            **MEMORANDUM & ORDER**
                                                      21-CV-4481 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Presently before the Court in this action, where Plaintiff Sean Figaro seeks judicial review of the Social Security Administration's ("SSA") denial of his claim for Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkts. 9, 12; *see also* Dkt. 14.) For the foregoing reasons, the Court grants Plaintiff's motion, denies the Commissioner of Social Security's ("Commissioner") motion, and remands this case.

**BACKGROUND**

**I.    Factual and Procedural Background**

      Plaintiff, a 55-year-old resident of Brooklyn, spent much of his adult life working as a manual laborer carrying furniture and delivering goods. (Tr. 34–35.) In 2009, Plaintiff stopped working because he had developed difficulties standing, lifting heavy objects, and walking. (*Id.*; Tr. 41–42 (testifying that: "I don't even push a shopping cart. I don't even want to take the laundry out").) Plaintiff began seeing Dr. Pervaiz Iqbal, M.D., in 1986 (Tr. 256.), and the record contains treatment notes which Dr. Iqbal entered, spanning from 2015 until 2020. (Tr. 358–422, 454–66, 478–502, 869–72.) In 2015, Plaintiff visited Dr. Iqbal to investigate abdominal pain. (Tr. 358.) A few months later, Dr. Iqbal diagnosed Plaintiff with "dorsalgia," "asthma," "morbid obesity,"

"pain in the joints," and high blood pressure. (Tr. 386.) Regular check-ups and medication prescriptions followed—with Plaintiff occasionally complaining about pain, allergy, and itching—and in late 2017, Dr. Iqbal amplified Plaintiff's list of diagnoses and added "chronic obstructive pulmonary disease" ("COPD") and "obstructive sleep apnea." (*See, e.g.*, Tr. 395–98, 414–17.) In 2019, Dr. Iqbal filled a check-box questionnaire and opined that Plaintiff could walk no than two hours in an eight-hour workday and that he could sit for no more than four hours in an eight-hour workday. (Tr. 469–72.) Dr. Iqbal further opined that Plaintiff could not lift more than 20 pounds and could only rarely lift more than ten pounds. (Tr. 471.) In early 2019, Plaintiff underwent surgery to address his hernia (Tr. 518–21), and in mid-2019, developed prostate cancer, for which he received treatment. (Tr. 840–50.)

In 2017, in connection with Plaintiff's disability application, Dr. Olga Yevsikova, M.D., an internist, twice examined Plaintiff in 2017 and 2019. In 2017, Dr. Yevsikova diagnosed Plaintiff with, among other things, "bronchial asthma," "obstructive sleep apnea," high blood pressure, and allergies. (Tr. 334.) She concluded that Plaintiff had "mild to moderate limitations" in lifting and carrying heavy objects, and only "mild limitation[s]" in squatting, kneeling, and climbing stairs. (*Id.*) In 2019, Dr. Yevsikova issued a similar opinion, adding to her list of diagnoses "morbid obesity" and "low back pain," and now classifying Plaintiff's same limitations as "moderate" and "mild to moderate," respectively. (Tr. 347–48.) Along with her 2019 opinion, Dr. Yevsikova included a check-box questionnaire in which she opined that Plaintiff could not lift more than 20 pounds, and could only occasionally lift up to 20 pounds. (Tr. 349–54.) Effectively agreeing with Dr. Iqbal, Dr. Yevsikova opined that Plaintiff could walk for no than two hours in an eight-hour workday and that he could sit for no more than four hours in an eight-hour workday. (Tr. 350.)

On June 12, 2017, Plaintiff protectively applied for SSI alleging disability since January 1, 2017. (Tr. 225.) A hearing was held before an Administrative Law Judge ("ALJ") Mark Solomon on August 13, 2019. (Tr. 30–47.) On December 31, 2020, ALJ Solomon issued a decision denying SSI benefits. (Tr. 1.) Plaintiff appealed the ALJ's decision on January 4, 2020, and the Appeals Council denied Plaintiff's appeal on June 4, 2021, making the ALJ's decision final. (*Id*.) On August 9, 2021, this action timely followed.[1] (Dkt. 1.)

II.     **The ALJ's Decision**

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[2] First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is

---

[1] According to 42 U.S.C. § 405(g):

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [he] was a party. . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [him] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Plaintiff's appeal was denied on June 4, 2020 (Tr. 1), and the Complaint was filed on August 9, 2021 (Complaint, Dkt. 1), 60 days after the presumed receipt date of the decision, rendering this appeal timely.

[2] Some of the cases cited herein involve disability insurance benefits ("DIB") regulations, while this case involves SSI, but the DIB and SSI regulations are "virtually identical." *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020). The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

3

no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether the plaintiff has an impairment that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1. If the ALJ determines at step three that the plaintiff has an impairment that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Social Security Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have a such an impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing on to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of June 12, 2017. (Tr. 15.) At step two, the ALJ determined

4

that Plaintiff suffered from asthma, obstructive sleep apnea, late-onset lumbar degenerative disc disease, and right hip osteoarthritis, all of which qualified as severe impairments. (Tr. 16.) The ALJ designated Plaintiff's prostate cancer, high blood pressure, obesity, and hernia as non-severe. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments, both individually and in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24.) In reaching this determination, the ALJ rejected Listings 1.02, 1.04, 3.03, 3.09, 4.02, and 12.02. (Tr. 17.) Having determined that Plaintiff's impairments did not meet or medically equal any of the impairments in the Listings, the ALJ turned to determining Plaintiff's RFC. Based on Dr. Iqbal's notes, Dr. Yevsikova's opinions, and his own observations, the ALJ found the following:

> I find that prior to March 21, 2019, the claimant had the residual functional capacity to perform light work as defined in [20 C.F.R. § 416.967(b)][3] except he: could sit for six hours, stand for six hours, and walk for two hours during the course of an eight-hour workday; could lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; could occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl; needed to avoid working at unprotected heights or with hazardous machinery; and needed to avoid concentrated exposure to respiratory irritants and avoid exposure to weather extremes. As of March 21, 2019, the claimant has the residual functional capacity to perform a reduced range of light work as defined in [20 C.F.R. § 416.967(b)] except he is able to sit for a total of four hours and stand or walk for a total of four hours during the course of an eight-hour workday; can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; can occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl; avoid working at unprotected heights or with hazardous machinery; avoid concentrated exposure to respiratory irritants and avoid exposure to weather extremes.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

5

(Tr. 17–22.)  Specifically, the ALJ found Dr. Iqbal's 2019 opinion "unpersuasive" because it was a "checkbox questionnaire with minimal explanation." (Tr. 22.) The ALJ concluded that Plaintiff could perform a "significant number of jobs in the national economy" in line with 20 C.F.R. § 416.969(a). (Tr. 23–24.) Based on the testimony of a Vocational Expert at the hearing, the ALJ decided that Plaintiff could work as a routing clerk, sorter, and mail clerk. (Tr. 23.) The ALJ thus concluded that Plaintiff was not disabled. (Tr. 24.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). However, in reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (2d Cir. 2012) (quotation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (alterations and internal quotation marks omitted)).  In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted).  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the

6

Commissioner's findings as to any fact, those findings are conclusive and must be upheld. *See* 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Courts in this Circuit have recognized at least five grounds for which the district court may remand a social security determination to the agency for further consideration. First, the ALJ has an affirmative duty to "develop the record in light of the essentially non-adversarial nature of a benefit proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (citation omitted); *see also* 42 U.S.C. § 423(d)(5)(B) (noting that the Commissioner must "develop a complete medical history of at least the preceding twelve months for any case"); *Decker v. Harris*, 647 F.2d 291, 293–94, 299 (2d Cir. 1981) (noting that although an applicant bears the burden to place his disability at issue, the ALJ has the "affirmative duty to inquire into all the matters at issue[.]" (citation omitted)). Once an applicant submits documents placing her disability at issue, the ALJ has an independent duty fill obvious gaps in the record, obtain up-to-date documents in lieu of relying on stale ones, and make all reasonable attempts to obtain medical opinions. *See Thomas v. Comm'r of Soc. Sec.*, No. 20-CV-5086 (PKC), 2022 WL 523544, at *7–8 (E.D.N.Y. Feb. 22, 2022) (remanding for failure to obtain medical opinion and for obvious gaps in the record); *Caban v. Comm'r of Soc. Sec.*, No. 18-CV-929 (PKC), 2019 WL 4254000, at *4–5 (E.D.N.Y. Sept. 9, 2019) (remanding for failure "to solicit updated and current medical opinions . . . following the progression of [plaintiff's] symptoms after her February 2015 surgery"). Second, in line with her obligation to obtain medical data, the ALJ is "not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps[.]" *Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282 (E.D.N.Y. Jan. 2, 2018) (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010)). Third, having developed the record, the ALJ must consider all of the evidence before her. *See*

*Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) ("[F]ailure to acknowledge relevant evidence or to explain its implicit rejection is plain error." (citation omitted)); *DeGraff v. Comm'r of Soc. Sec.*, 850 F. App'x 130, 132 (2d Cir. 2021) (remanding because the "ALJ did not consider the records [submitted to her.]"). Specifically, the ALJ must consider the record holistically and may not selectively rely on favorable portions of the record while ignoring others. *See Hernandez v. Comm'r of Soc. Sec.*, No. 20-CV-5760 (PKC), 2022 WL 604005, at *6–7 (E.D.N.Y. Mar. 1, 2022) (remanding in part where "the ALJ relied on a single data point, thereby impermissibly "cherry-picking" medical evidence that supported his conclusion."). Fourth, the ALJ must fully explain her reasoning to allow the Court to engage in meaningful judicial review. *See Klemens*, 703 F. App'x at 36 ("Among the ALJ's legal obligations is the duty to adequately explain his reasoning" (citation omitted)); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where [the court is] unable to fathom the ALJ's rationale in relation to the evidence in the record[.]"). Fifth, the ALJ must correctly apply the relevant legal standard in reaching her decisions. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) ("Failure to apply the correct legal standards is grounds for reversal." (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984))).

Here, Plaintiff argues that the ALJ: (1) improperly "played doctor" when rendering his RFC finding, and (2) made findings that were not supported by substantial evidence. (*See generally* Dkt. 10.) The Court addresses Plaintiff's arguments, as well as the ALJ's failure to develop the record.

**I.     The ALJ's Failure to Develop the Record**

Although Plaintiff does not explicitly raise the issue, the Court finds that the ALJ's failure to solicit any medical opinion from Plaintiff's only treating source, Dr. Iqbal, was error.

8

Although Plaintiff filed his case after March 27, 2017, and it is therefore not subject to the "treating physician rule," there is a growing consensus amongst courts applying the new regulations that an ALJ's obligation to develop the record still requires her to obtain the opinion of a claimant's treating source. *See e.g., Ayala v. Kijakazi*, No. 20-CV-09373 (RWL), 2022 WL 3211463, at *21 (S.D.N.Y. Aug. 9, 2022) ("Under the new regulations, courts often find that an informed decision could not be reached where an ALJ failed to obtain opinion evidence from the plaintiff's long-term treating physicians") (collecting cases). Here, the ALJ did not solicit Dr. Iqbal's opinion and deemed Dr. Iqbal's only substantive observation in the record—the check-box questionnaire—conclusory. The ALJ, instead, relied on the isolated observations of consultative examiner Dr. Yevsikova, which the ALJ "generally considered persuasive." (Tr. 21–22.) Although the failure to obtain an opinion is not a fatal error if the record already "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), the record here is skeletal and largely devoid of anything other than the minimal treatment notes of Dr. Iqbal and the opinions of Dr. Yevsikova, who examined Plaintiff twice. As to the latter, the Commissioner effectively concedes that in 2019, Dr. Yevsikova "did not perform any pulmonary function tests [on Plaintiff] and did not review the May 2018 MRI of [Plaintiff's] right hip" when rendering her opinion. (*See* Dkt. 12-1, at 20; Dkt. 10, at 11.) Thus, Dr. Yevsikova's opinion was not only limited temporally, but substantively as well. Such evidence was insufficient for the ALJ to proceed without the opinion of Plaintiff's physician of nearly 40 years, Dr. Iqbal, especially given that Dr. Iqbal opined, even if in a questionnaire format, that Plaintiff had significant physical limitations and given that Dr. Iqbal's opinion was consistent with Dr. Yevsikova's responses to a similar questionnaire. (*See* Tr. 350 (agreeing with Dr. Iqbal that Plaintiff could not walk for more than two hours, or sit for more than

four hours, in an eight-hour workday));[4] *see also Hernandez*, 2022 WL 604005, at *4 ("[T]he lack of [adequate] notes . . ., coupled with an absence of any treating source's opinion, reveals a critical and obvious gap in [p]laintiff's medical history that requires further development."). Furthermore, an ALJ errs when, having noted that a medical opinion is conclusory, fails to take "further action . . . to develop the record, such as recontacting [the doctor] for additional information." *Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2022 WL 580983, at *6 (E.D.N.Y. Feb. 24, 2022).

Thus, the ALJ's failure to develop the record requires remand.

## II. The ALJ's Impermissible Medical Opinion

Plaintiff argues that the ALJ impermissibly "played doctor" and filled the evidentiary gaps left by his failure to obtain medical opinion with the ALJ's layperson opinions about Plaintiff's functional capacity. (Dkt. 10, at 10–12.) The Court agrees.

In determining Plaintiff's RFC at step four, the ALJ recited Drs. Yevsikova's and Iqbal's dueling and partially contradictory opinions as to Plaintiff's functional capacity. (Tr. 22–23.) Such inconsistency created an obvious gap in the record as to Plaintiff's true abilities that the ALJ was required to fill and resolve by obtaining additional medical opinions or other evidence. Instead, the ALJ proceeded to render his own medical opinion, adopting Dr. Yevsikova's assessments in part—for instance, by agreeing that Plaintiff could lift no more than 20 pounds— and on other occasions, simply rendering a medical opinion *de novo*. For instance, while the opinions before the ALJ were unanimous that Plaintiff could not walk for more than two hours, or sit for more than four hours, in an eight-hour workday, the ALJ came up with his own competing view that Plaintiff "could sit for six hours [and] stand for six hours." (Tr. 17.) The Commissioner's

---

[4] Inexplicably, although Dr. Yevsikova's 2019 opinion also includes a "check-box" questionnaire of the kind the ALJ dismissed from Dr. Iqbal, the ALJ appears to have adopted Dr. Yevsikova's questionnaire without criticism or doubt. (*See* Tr. 21–22.)

10

response before this Court that an ALJ may properly consider all the evidence before her, borders on frivolous. (Dkt. 12-1, at 20.) Here, the ALJ did not consider the evidence before him, which was largely inconsistent with the ALJ's conclusion, but instead either wholly rejected portions of that evidence or appointed himself an expert and relied on his own contrary, unsupported opinion about Plaintiff's purported physical abilities. Repeatedly, courts in this Circuit have explained that "[t]he ALJ is a layperson, not a medical doctor. Therefore, she is neither capable of nor permitted to interpret or judge the validity of raw medical data in determining a plaintiff's residual functional capacity." *Aponte v. Comm'r of Soc. Sec.*, No. 20-CV-4150 (FB), 2022 WL 2484241, at *1 (E.D.N.Y. July 6, 2022) (collecting cases). The Court accordingly remands on this basis.[5]

---

[5] Because the Court finds that the ALJ failed to develop the record, the Court need not resolve Plaintiff's remaining argument that the ALJ's findings were not supported by substantial evidence. *See, e.g.*, *Adeyemi v. Comm'r of Soc. Sec.*, No. 20-CV-3386 (MKB), 2022 WL 4134118, at *8 (E.D.N.Y. Sept. 12, 2022) ("[W]hen the ALJ fails to develop the record, the court need not—indeed, cannot—reach the question of whether the [ALJ's] denial of benefits was based on substantial evidence." (citations omitted)); *Torres v. Comm'r of Soc. Sec.*, No. 13 CIV. 730 (KBF), 2014 WL 406933, at *6 (S.D.N.Y. Feb. 3, 2014) ("Without a fully developed record, however, an ALJ's decision to deny a claimant['s] benefits is not supported by substantial evidence." (cleaned up)); *Baez v. Comm'r of Soc. Sec.*, No. 17-CV-3595 (MKB), 2018 WL 4688951, at *9 (E.D.N.Y. Sept. 28, 2018) ("[W]here an ALJ fails to adequately develop the record [], the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence."); *Miraglia v. Comm'r of Soc. Sec.*, No. 20-CV-1964 (EK), 2022 WL 1556409, at *4 (E.D.N.Y. May 17, 2022) ("Because the ALJ's failure to develop the record is a threshold issue that impacts other aspects of the disability claim, the Court need not address [plaintiff's] remaining arguments . . . [as] the ALJ's analysis may change on these points upon remand." (cleaned up)).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings. The Commissioner's decision is vacated and remanded for further administrative proceedings pursuant to 42 U.S.C. § 405(g). The Clerk of Court is respectfully directed to close this case and enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
      Brooklyn, New York